**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(Miami Division)**


Case No. 14-cv-21358-CMA


LILIAN SANTOS,

      Plaintiff,

v.

ASHFORD UNIVERSITY, LLC, a
Foreign limited liability company, and
BRIDGEPOINT EDUCATION, INC.,
a foreign corporation,

      Defendants.

_____/

**DEFENDANTS, ASHFORD UNIVERSITY, LLC AND BRIDGEPOINT EDUCATION,**
**INC.'S MOTION TO DISMISS PLAINTIFF, LILIAN SANTOS' FIRST AMENDED**
**COMPLAINT (D.E. 17) FOR FAILURE TO STATE A CAUSE OF ACTION, PURSUANT**
**TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendants, Ashford University, LLC ("Ashford") and Bridgepoint Education, Inc.

("Bridgepoint") (collectively "Defendants"), by and through undersigned counsel, hereby moves

for this court to dismiss the First Amended Complaint (the "Complaint) (D.E. 17) filed by

Plaintiff Lilian Santos ("Santos" or "Plaintiff") for failure to state a cause of action pursuant to

Federal Rule of Civil Procedure 12(b)(6), and in support thereof states:

**I.**   **The Relevant Statute Sued Upon**

Section §227(b)(1)(A)(iii) of the TCPA states that:

> "It shall be unlawful for any person within the United States, or any person outside
> the United States if the recipient is within the United States … to make any call
> (other than a call made for emergency purposes or made with the prior express
> consent of the called party) using any automatic telephone dialing system or an
> artificial or prerecorded voice …to any telephone number assigned to a paging
> service, cellular telephone service, specialized mobile radio service, or other radio
> common carrier service, or any service for which the called party is charged for the
> call".

1

## II. The Complaint

On April 16, 2014, Plaintiff Santos filed a one-count Complaint (D.E. 1), as amended on

May 16, 2014 (D.E. 17) alleging violations by Defendants of §227(b)(1)(A)(iii) of the Telephone

Consumer Protection Act ("TCPA") (the "Complaint") (D.E. 17) against Ashford directly, and

against Bridgepoint, its parent corporation on a theory of vicarious liability. Plaintiff's allegations

basically track the language of the above referenced statute in a conclusory fashion.

## III. The Allegations Against Both Defendants

The scant and conclusory factual allegations in Plaintiff's Complaint against Defendants

collectively are that:

    a.  "Defendants incessantly and unlawfully called Plaintiff's cellular telephone using an automatic telephone dialing system (i.e. "auto-dialer") or a pre-recorded or artificial voice." Complaint, ¶1.

    b.  "[T]he telephone calls forming the basis of this action were placed by the Defendants into this District, and …Defendants conduct business in this District by regularly placing telephone solicitation calls, sending mail, and providing online educational services in this District". Complaint, ¶3.

    c.  "Plaintiff … received telephone calls from Defendants within this District." Complaint, ¶4.

    d.  "Plaintiff is the sole owner, possessor, subscriber, and user of the cellular telephone[1] that Defendants were calling." Complaint, ¶5.

    e.  "In sum, Defendants made telephone calls to Plaintiff's cellular telephone, each of which was made using an automatic telephone dialing system or an artificial or pre-recorded voice." Complaint, ¶18.

    f.  "Defendant[2] made the aforementioned telephone calls knowing that they[3] were using an automatic telephone dialing system or an artificial or prerecorded voice to call a cellular telephone, and further knew that such calls were in violation of the

---

[1] Plaintiff amended her original complaint by citing to her redacted cellular telephone number in ¶8 of the Complaint.
[2] Plaintiff, by reference to the singular when there are two defendants, and then subsequent use of the word "they", makes this allegation unclear as to whether it is referring to Ashford, to whom it repeatedly alleges actually made these calls, or both Defendants, to which its allegations in ¶¶1, 3, 4, 5 & 18 have been  directed. For that reason alone the Complaint should be subject to dismissal.

[3] See fn. 2 above.

TCPA, and consequently, these violations were willful and knowing." Complaint, ¶19.

In these collective allegations in the Complaint, Plaintiff fails to distinguish between which of these two Defendants made these calls, and further fails to identify or allege the date, time, number, frequency, nature, and time period over which these alleged calls were made to Plaintiff's cellular number. Plaintiff should be required to make such further factual allegations in order to allow Defendants to properly respond to the allegations made against them. Plaintiff's allegations that Defendants made calls to her cell phone are vague, generalized, and conclusory, and are lacking the level of specificity as required by the United States Supreme Court to state a valid cause of action for violation of this section of the TCPA.

### IV. The Allegations Against Defendant Ashford

The similarly bare and conclusory factual allegations in Plaintiff's Complaint against Defendant Ashford alone are that:

a. "Shortly [after February 2013][4] Plaintiff began receiving voluminous automated telephone calls purporting to come from Defendant Ashford" Complaint ¶¶8 & 9.

b. "Plaintiff's cellular telephone indicated that these calls came from telephone number 866-685-0150, which is assigned to Defendant Ashford" Complaint ¶10.

c. "Whenever Plaintiff received a call from this number, she was met with a noticeable period of "dead air" while the caller's automated telephone system attempted to connect her to a live telephone agent." Complaint ¶11."

d. "On occasions where the Plaintiff answered the call and spoke to an agent, the agent advised that he or she was calling from Defendant Ashford, and that they were seeking someone named "Jerry" who had inquired about educational services." Complaint ¶12.

e. "Plaintiff has never done business with Ashford, and does not know anybody by the name of Jerry." Complaint ¶13.

f. "Plaintiff advised Defendant Ashford on several occasions that it had called the wrong person, but the calls nonetheless continued." Complaint ¶14.

---

[4] Contradicting this assertion that Plaintiff got her cell phone, and only began receiving calls after February 2013, in a. and b. of Plaintiff's prayer for relief in the Complaint, Plaintiff seeks statutory damages based upon TCPA violations against Defendants "over the last four years".

g. "Defendant Ashford violated §227(b)(1)(A)(iii) of the [TCPA] by placing telephone calls to Plaintiff's cellular telephone, which were initiated by an automatic telephone dialing system or made using an artificial or prerecorded voice, and not legally permissible under any provision to the aforementioned statute." Complaint ¶21.

In these collective allegations in the Complaint, Plaintiff seems to indicate that it was Defendant Ashford, and not Defendant, Bridgepoint, who made these calls. These allegations contradict the more generalized allegations made against both Defendants cited above that they both made the calls. These conflicting allegations alone, make the Complaint subject to dismissal.

Again, even in its specific allegations against Defendant Ashford, Plaintiff still fails to identify or allege the dates, time, number, frequency, nature, and time period over which these alleged calls were made to Plaintiff's cellular number. Plaintiff's specific allegations that Defendant Ashford made calls to her cell phone are still vague, generalized, and conclusory, and lack the level of specificity required to state a valid cause of action. Again, Plaintiff should be required to specify these further factual allegations in order to allow Defendant Ashford to be able to properly respond to the allegations made against it.

## V. **The Vicarious Liability Allegations Against Defendant Bridgepoint**

Further, Plaintiff makes these bare conclusory factual allegations in support of its vicarious liability theory against Defendant Bridgepoint:

a. "[it] owns, operates, and maintains the automatic telephone dialing systems and calls centers used to perform the telemarketing of Defendant Ashford" Complaint, ¶7.

b. "Defendant Ashford made these calls at the direction and control of its parent company, Defendant Bridgepoint." Complaint, ¶15.

c. "[it] maintains and operates the call centers through which Defendant Ashford conducts its telemarketing campaign, including the calls to Plaintiff." Complaint, ¶16.

d. "[it's] centers operate using Avaya-brand predictive dialer systems, which have the

capacity to dial numbers without any human intervention in the calling process, and which the FCC has ruled are automatic telephone dialing systems." Complaint, ¶17.

e. "Defendant Ashford University placed the aforementioned telephone calls at the direction and control of Defendant Bridgepoint, and consequently, Defendant Bridgepoint is vicariously liable for Ashford University's violations of the TCPA." Complaint, ¶22.

As noted above, Plaintiff doesn't appear to make allegations that Defendant Bridgepoint made the calls, but rather because (i) it is the parent of Defendant Ashford, (ii) owns the phone systems from which the calls were made, and (iii) conclusorily, without any specific factual allegations supporting the same, states that Defendant Bridgepoint had its subsidiary make the calls at its "direction and control", that somehow Defendant Bridgepoint is vicariously liable for Defendant Ashford's alleged TCPA violations.

Despite the failure to allege the dates, time, number, frequency, nature, and time period over which these alleged calls were made, as cited above, Plaintiff's bare bone conclusory allegations of vicarious liability without any factual support, subjects the claim of vicarious liability against Defendant Bridgepoint for calls allegedly made by its subsidiary Defendant Ashford, to dismissal for failure to state a cause of action.

## VI. Memorandum of Law

### a. Pleading Standard

The Complaint fails to meet the heightened pleading standard set forth by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) which held that "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [and] [f]actual allegations must be enough to raise a right to relief above the speculative level." To survive a motion to dismiss for failure to state a claim upon which relief

5

can be granted, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, even if they are doubtful in fact. Id. While, for most types of cases, the Federal Rules have eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he bases his claim, the general rule governing pleadings still requires a showing, rather than a blanket assertion, of an entitlement to relief. Id. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also the grounds on which the claim rests. Id.

Accordingly, the Complaint fails to state a claim upon which relief can be granted because it does not satisfy the pleading standards of the Federal Rules of Civil Procedure. Plaintiff fails to satisfy the pleading requirement under Fed. R. Civ. P. 8(a), that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff's failure to plead facts sufficient to support a claim for relief is a basis for dismissal of this action. Fed. R. Civ. P. 12(b)(6).

As a threshold requirement of Rule 8(a), the complaint must possess "enough heft" to show that the pleader is entitled to relief, and allegations "plausibly suggesting (not merely consistent with)" the elements of a cause of action. Twombly, 550 U.S. at 557. The Supreme Court has reaffirmed and elaborated on its opinion in Twombly, and emphasized the robustness of factual allegations required to satisfy the pleading requirements of Rule 8. See, Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In Iqbal, the Supreme Court held that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. at 1949. Rather, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint does not meet this standard where it "pleads facts that are 'merely consistent with' a defendant's liability." Id. (quoting Twombly, 550 U.S. at 557).

While the requirement that a pleading contain a short and plain statement of a claim showing that the pleader is entitled to relief does not require detailed factual allegations, it does demand more than an unadorned "the defendant unlawfully harmed me" accusation, as Plaintiff has pled herein. Iqbal, 129 S.Ct. at 1949. A pleading, like the Complaint, that offers labels and conclusions or formulaic recitation of elements of causes of action will not do, nor does this Complaint suffice since it merely tenders naked assertions devoid of further factual enhancement. Id.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has "facial plausibility" when plaintiff pleads factual content that allows the court to draw a reasonable inference that defendant is liable for the misconduct alleged. The "Plausibility" standard, for a complaint to survive a motion to dismiss for failure to satisfy a short and plain statement requirement, is not akin to a probability requirement, but asks for more than a sheer possibility that the defendant has acted unlawfully. Id.

The Eleventh Circuit, analyzing the Supreme Court's plausibility standard, held that "a complaint must now contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Am Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1289 (11th Cir. 2010) (*citing* Twombly, 550 U.S. at 570).   The standard calls "for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim.  Id. (*citing* Twombly at 556).

### The Complaint Lacks Factual Specificity of Dates, Time, Place, Number, Frequency, Time Frame, and Nature of the Calls Allegedly Made, Who Made Them, Basis for Vicarious Liability, and the Use of an Auto Dialer

Quite simply, Plaintiff's scant factual and conclusory allegations do not rise to this level, especially in light of her failure to assert the dates, time, place, number, frequency, nature and time frame in which these calls were made, and further in its failure to properly distinguish between which of these Defendants made these calls. Also, these allegations fail to provide

7

enough heft to support a claim for vicarious liability against Defendant Bridgepoint, as will be further demonstrated below.

Additionally, use of an automatic telephone dialing system is a necessary element of a claim under the TCPA, so dismissal is required in the absence of a plausible inference that Defendant used such a system. McGinity v. Tracfone Wireless, Inc., --- F.Supp.2d ----, 2014 WL 1202950 (M.D.Fla. March 11, 2014).

In holding that the plaintiff had failed to allege any facts tending to create an inference that the calls were made using an automatic telephone dialing system, Middle District of Florida Judge Anne C. Conway relied upon other district courts which have held that "a 'bare allegation that [a defendant] used an [automatic telephone dialing system] is not enough.' " Jones v. FMA Alliance Ltd., 2013 WL 5719515, at *1 (D.Mass.2013) (*quoting* Gragg v. Orange Cab Co., Inc., 942 F.Supp.2d 1111, 1113–14 (W.D.Wash.2013)); *see also* Johansen v. Vivant, Inc., No. 12 C 7159, 2012 WL 6590551, at *3 (N.D.Ill. Dec. 18, 2012) ("It is not unreasonable ... to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via the [automatic telephone dialing system]."); Kramer v. Autobytel, Inc., 759 F.Supp.2d 1165, 1171 (N.D.Cal.2010) (stating the same legal principle, but finding that the plaintiff stated sufficient factual allegations to avoid dismissal).

The plaintiff in McGinity relied upon on her claim that the defendant called her 6,000 times in 45 days, or approximately once every eleven minutes throughout the entire 45–day period, to infer that an automatic dialing system must have been used. Judge Conway found the 6,000 call claim rather implausible, and not supported by other factual allegations, as well as contradicted by the rest of the complaint, which did not describe the content of the calls.

Similarly, Plaintiff herein, like in McGinity, makes similar bare bones conclusory allegations concerning the automatic dialing system:

(a) "Plaintiff alleges that Defendants incessantly and unlawfully called Plaintiff's cellular telephone *using an automatic telephone dialing system (i.e. "auto-dialer") or a pre-recorded or artificial voice*." Complaint, ¶1.

(b) "Bridgepoint … owns, operates, and maintains *the automatic telephone dialing systems* and calls centers used to perform the telemarketing of Defendant Ashford." Complaint, ¶7.

(c) "Whenever Plaintiff received a call from this number, *she was met with a noticeable period of "dead air" while the caller's automated telephone system attempted to connect her to a live telephone agent*." Complaint, ¶11.

(d) "*Defendant Bridgepoint's call centers operate using Avaya-brand predictive dialer systems, which have the capacity to dial numbers without any human intervention in the calling process, and which the FCC has ruled are automatic telephone dialing systems*." Complaint, ¶17.

(e) "In sum, Defendants made telephone calls to Plaintiff's cellular telephone, *each of which was made using an automatic telephone dialing system or an artificial or pre-recorded voice*." Complaint, ¶18.

(f) "Defendant made the aforementioned telephone calls knowing that they were *using an automatic telephone dialing system or an artificial or prerecorded voice* to call a cellular telephone, and further knew that such calls were in violation of the TCPA, and consequently, these violations were willful and knowing." Complaint, ¶19.

(g) "Defendant Ashford University violated 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA by placing telephone calls to Plaintiff's cellular telephone, *which were initiated by an automatic telephone dialing system or made using an artificial or prerecorded voice*, and not legally permissible under any provision to the aforementioned statute." Complaint, ¶21.

Bare allegations, like those cited above from the Complaint, that Defendants used an automatic telephone dialing system is simply not enough.

As such, the Complaint should be dismissed without prejudice in order to allow Plaintiff to factually support these conclusory allegations, in order that Defendants can properly respond to the allegations raised against them. However, if she cannot do so, then such Complaint should be dismissed with prejudice.

**b.  Vicarious Liability**

Plaintiff  fails to state a claim for relief against Defendant Bridgepoint because Plaintiff's Complaint, while making broad based and contradictory allegations of calls made by Defendants collectively without distinction, nonetheless seems to suggest that the calls were only made by Bridgepoint's subsidiary, Ashford. As such, Plaintiff is not alleging that Bridgepoint "made or placed any calls to her using an 'automatic telephone dialing system" as required under the plain language of the TCPA. Thomas v. Taco Bell Corp., 2012 U.S. Dist. LEXIS 107097 at *10, 2012 WL 3047351 (C.D. Cal. June 25, 2012) ("The plain language of the TCPA assigns civil liability to the party who 'makes' a call.")). Further Plaintiff's Complaint lacks factual allegations to overcome the general rule that a parent company is not liable for its subsidiary's actions, and fails to allege elements required for their claims under the doctrines of vicarious liability, veil piercing, agency and ratification. As such, Plaintiff fails to state a claim under any theory of vicarious liability.

### Vicarious Liability Does Not Apply to Violations of §227(b)(1)(A)

Just last year, Judge Robert N. Scola, Jr. of this District, was presented with a similar issue addressed by this motion, in Mais v. Gulf Coast Collection Bureau, Inc., 944 F.Supp.2d 1226, 1241-1242 (S.D.Fla. 2013), when he granted two creditor defendants' motion for summary judgment on the ground that they couldn't be held liable under §227(b)(1)(A) of the TCPA, the applicable provision cited in the Complaint herein, for calls made by another defendant collector.

Section 227(b)(1)(A), by its plain language, makes it unlawful for anyone "to make any call," without consent, to a cell phone, using an automatic telephone dialing system or an artificial or prerecorded voice, whereas §227(c)(5), also in the same statute, the TCPA, and which concerns violations of the "Do Not Call" Registry, imposes liability for multiple calls made "by or on behalf of " a party.

Judge Scola ruled that the choice and placement of language in the different statutory provisions indicates that Congress intended to allow for "on behalf of," or vicarious, liability in §227(c)(5), but not in §227(b)(1)(A). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (*quoting* United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir.1972)); *see also*, United States v. Gonzales, 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997). Noting the difference in language between the two sections of the statute, other district courts have also held that there is no "on behalf of" liability for defendants under §227(b). *See, e.g.*, Mey v. Pinnacle Sec., LLC, 2012 WL 4009718, at *3–*4 (N.D.W.Va. Sept. 12, 2012); Thomas v. Taco Bell Corp., 879 F.Supp.2d 1079, 1084 (C.D.Cal.2012).

### Traditional Tort Principles of Vicarious Liability
### Do Not Apply to Violations of §227(b)(1)(A)

Judge Scola went on to note, Mais, at 1242, that even while recognizing that Congress must not have intended such liability for violations of §227(b), some of those courts have found it appropriate to also consider whether a defendant may nonetheless be held vicariously liable under traditional tort principles. Those other courts apparently felt compelled to do so by Meyer v. Holley, 537 U.S. 280, 286–87, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003), wherein the Supreme Court stated that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules," absent any contrary indications.

Judge Scola noted that rule is fine as far as it goes, but that he could not see how it can apply where, as here, Congress has specifically provided for vicarious liability in one part of the statute, but not in the other. Id. Judge Scola noted that in Meyer, the Supreme Court considered

legislation, the Fair Housing Act, that was altogether silent on whether vicarious liability could be imposed. *See* Id. at 285, 123 S.Ct. 824 ("[The Fair Housing Act] says nothing about vicarious liability."). He said, in that context, it makes sense to turn to traditional vicarious liability rules, which we presume Congress did not intend to supplant absent it saying so. But because Congress here made a choice about where vicarious liability ought to be imposed, Judge Scola found that he should not go to the common law to alter Congress's choice. Mais, at 1242, *see* Meyer, at 290–91, 123 S.Ct. 824 ("courts ordinarily should determine [which parties are liable] in accordance with traditional principles of vicarious liability—unless, of course, Congress, better able than courts to weigh the relevant policy considerations, has instructed the courts differently"). All things being equal, then, Judge Scola found those non call making defendants couldn't be held vicariously liable under traditional tort theories in Mais, at 1242.

### 2008 FCC Ruling is Not Entitled to Deference on the Issue of Vicarious Liability

But as Judge Scola said in Mais "all things are not equal", id., because of a portion of a 2008 Federal Communications Commission ("FCC") ruling, entitled In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 F.C.C.R. 559, 565 (2008), which declared that "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." It is anticipated that Plaintiff will cite this 2008 FCC Ruling, subsequent FCC Rulings, and cases relying upon it, in opposition to this Motion to Dismiss on the issue of vicarious liability.

However, despite this 2008 FCC Ruling being limited to third party debt collectors, and not applicable to education institutions making telemarketing calls, even if this ruling were applicable to the present circumstances, Judge Scola, in Mais, decided that the 2008 FCC Ruling is not entitled to deference on the issue of various liability under §227(b)(1)(A). Mais, at 1243.[5]

---

[5] The FCC has agreed that they have no binding effect on courts, are not entitled to deference under Chevron, and that their 'force is dependent entirely on [their] power to persuade.' " Creative Montessori Learning Ctr., 2014 WL

In reaching his conclusion, Judge Scola, Id. at 1238, applied the two-part framework announced in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Eleventh Circuit has said that "When determining whether to defer to an agency's interpretation of a statute it implements, the court follows the established Chevron framework." Koch Foods, Inc. v. Sec'y, U.S. Dept. of Labor, 712 F.3d 476, 480 (11th Cir.2013). The first step is to ask whether Congress has directly spoken on the matter at issue. See Jian Le Lin v. U.S. Atty. Gen., 681 F.3d 1236, 1239 (11th Cir.2012). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842–43, 104 S.Ct. 2778. "The court reaches Chevron step two only if the statute 'is silent or ambiguous with respect to the specific issue' being interpreted by the agency." Koch Foods, 712 F.3d at 480 (quoting Nat'l Ass'n of State Util. Cons. Advs. v. F.C.C., 457 F.3d 1238, 1253 (11th Cir.2006)). "Where the court finds that the statute is clear, as it does here, no deference is accorded to the agency's interpretation." Koch Foods, 712 F.3d at 480.

Judge Scola applied the analysis under Chevron step one, and found that Congress had directly spoken on the issue, when it chose to employ "on behalf of" liability under one part of the statute, but not under the provision relevant in this case, §227(b)(1)(A). Mais, at 1243, In §227(b)(1)(A), Congress chose to provide liability only for those who "make" calls in violation of the TCPA. "Where the court finds that the statute is clear, as it does here, no deference is accorded to the agency's interpretation." Id. Citing, Koch Foods, 712 F.3d at 480.

Alternatively, to the extent that §227(b)(1)(A) could be viewed as silent or ambiguous on the issue of vicarious liability, Judge Scola found the FCC's interpretation to be unreasonable and unworthy of deference under Chevron step two. Id. at fn 9; see, Koch Foods, 712 F.3d at 480

865963, at *3 (quoting Dish Network LLC v. Federal Commc'n Comm'n, —— F. App'x ——, 2014 WL 323660, at *1 (D.C.Cir.2014)).

13

("The court reaches <u>Chevron</u> step two only if the statute 'is silent or ambiguous with respect to the specific issue' being interpreted by the agency."). In light of the fact that §227(c)(5) clearly calls for "on behalf of" liability, whereas §227(b)(1)(A) does not, Judge Scola found that the FCC's attempt to amend the statute to provide for vicarious liability in §227(b)(1)(A) is not a permissible or reasonable act of statutory gap-filling. <u>Mais</u>, at 1243, at fn. 9. Hence, Judge Scola correctly concluded that with respect to §227(b)(1)(A), the FCC has provided for vicarious liability where Congress did not. Judge Scola found that the FCC cites no authority or support for its determination that creditors are liable for calls placed by third-party debt collectors which ruling he found to be inconsistent with the statutory scheme. <u>Id</u>. At 1243. Therefore, Judge Scola correctly refused to defer to the FCC's determination, rather he employed the statute as written and found that only those who make calls in violation of §227(b)(1)(A) may be held liable.

Because, as in <u>Mais</u>, it is not clearly alleged in the Complaint that Defendant Bridgepoint, directly made any calls to the Plaintiff, but is rather being sued upon a vicarious liability theory, for its subsidiary, Defendant Ashford's direct actions, this Court should dismiss Defendant Bridgepoint, as a defendant from this action with prejudice.

### <u>Plaintiff Has Still Failed to Plead Traditional Tort Vicarious Liability in a Non-Conclusory Manner to Withstand an Attack Under Twombly and Iqbal</u>

Even assuming traditional tort rules of vicarious liability did apply here, Defendant Bridgepoint still cannot be held liable under the Complaint as conclusorily pled. <u>Palm Beach Golf Center-Boca, Inc. v. Sarris</u>, --- F.Supp.2d ----, 2013 WL 5972173 (S.D.Fla. October 22, 2013 (District Court, Kathleen M. Williams)(Plaintiff improperly failed to allege vicarious liability in the complaint. If a plaintiff's theory of recovery against a defendant is premised upon vicarious liability, it must be alleged in the complaint); <u>Prager v. FMS Bonds, Inc.</u>, No. 09–80775–CIV, 2010 WL 2950065, at *9 (S.D.Fla. July 26, 2010) (citing Florida state law and stating that vicarious liability must be pled in the complaint).

"Vicarious liability may arise in various ways under Florida law." <u>Banco Espirito Santo Int'l, Ltd. v. BDO Int'l, B.V.</u>, 979 So.2d 1030, 1032 (Fla. 3d DCA 2008). "The vicariously liable party is responsible to the plaintiff to the same extent as the primary actor; both are jointly liable for all of the harm that the primary actor has caused." <u>Grobman v. Posey</u>, 863 So.2d 1230, 1235 (Fla. 4th DCA 2003). To establish vicarious liability through the doctrine of respondeat superior, or through common law agency principles, the plaintiff must show, among other things, "control by the principal over the actions of the agent." *See*, <u>Tello v. Royal Caribbean Cruises, Ltd.</u>, 939 F.Supp.2d 1269, 1278, 2013 WL 1500573, at *6 (S.D.Fla. Mar. 30, 2013) (Lenard, J.); *see also*, <u>Vasquez v. United Enters. of Sw. Fla., Inc.</u>, 811 So.2d 759, 760–61 (Fla. 3d DCA 2002). "Absent control, there is no vicarious liability for the act of another, even for an employee." <u>Id.</u> at 761. "The essence of the common law's test for whether an agent is an employee or an independent contractor is the control of details; that is, whether the principal has the right to control the manner and means by which the agent accomplishes the work.". <u>Langfitt v. Fed. Marine Terminals, Inc.</u>, 647 F.3d 1116, 1121 (11th Cir.2011). Here, Plaintiff has made solely conclusory allegations, without any factual support, that Defendant Bridgepoint exercised, or had the right to exercise, the kind of control over Defendant Ashford necessary to create vicarious liability.

In <u>Thomas v. Taco Bell Corp.</u>, 879 F.Supp.2d 1079, 1084-85 (C.D.Cal.2012), the District Court reached the same conclusion that Judge Scola's did in <u>Mais</u> that a party can be held liable under §227(b)(1)(A)(iii), only directly if it personally "makes" a call in the method proscribed by the statute, but differed in that it allowed for the application of traditional standards of vicarious liability, including the alter ego and agency doctrines. However, the <u>Thomas</u> court found that in order to impose vicarious liability Plaintiff must demonstrate that the defendant entities acted as an agent of the principal: that the principal controlled or had the right to control them and, more specifically, the manner and means of the campaign conducted. <u>Id.</u>, *citing*, <u>United States v. Bonds</u>, 608 F.3d 495, 506 (9th Cir.2010)("Agency means more than mere passive permission; it

involves request, instruction, or command."); and <u>Klee v. United States</u>, 53 F.2d 58, 61 (9th Cir.1931).

As in <u>Thomas</u>, however, Plaintiff has failed to meet her pleading burden in this regard, and has failed to make specific non conclusory factual allegations that Defendant Bridgepoint directed or supervised the manner and means of the telemarketing campaign conducted by Defendant Ashford, or that it created or developed the automated messages sent, or that it played a role in the decision to distribute the cell phone message in the manner sent.

### Nor Can Plaintiff Support An Alter Ego or Piercing the Corporate Veil Claim Against Bridepoint

The <u>Thomas</u> Court also found that a party can also be vicariously liable if it is an alter ego of a party engaging in wrongdoing. However, Plaintiff's complaint does not assert liability on an alter ego theory, instead focusing on an agency or "control" theory of liability. Even had such an allegation been made, Plaintiff has not pled any ultimate facts that Defendant Ashford was a "mere instrumentality" of Defendant Bridgepoint, and that the corporate veil should be pierced in this case. *See*, <u>Calvert v. Huckins</u>, 875 F.Supp. 674, 678 (E.D.Cal.1995) (citing <u>Inst. of Veterinary Pathology, Inc. v. Cal. Health Labs., Inc.</u>, 116 Cal.App.3d 111, 119, 172 Cal.Rptr. 74 (1981)).

Nor has Plaintiff made the additional pleadings required to pierce the corporate veil as is required under Florida law by <u>Dania Jai-Alai Palace, Inc. v. Sykes</u>, 450 So.2d 1114 (Fla.1984), and its progeny. In <u>Dania Jai-Alai</u>, the Florida Supreme Court held that to pierce the corporate veil one must prove both that the corporation is a "mere instrumentality" or alter ego of the defendant, and that the defendant engaged in "improper conduct" in the formation or use of the corporation. <u>See id</u>. at 1120-21. Plaintiff has failed to make these allegations either, nor have pled any ultimate facts supporting the same.

**<u>Neither Can Plaintiff Support a Claim for Aiding and Abetting a TCPA Violation By Ashford Against Bridgepoint</u>**

While not specifically pled by Plaintiff, aiding and abetting liability, like vicarious liability, is also not afforded by the statute, and as such Plaintiff should not be provided an opportunity to amend its Complaint to do so against Defendant Bridgepoint.

In <u>Baltimore-Washington Telephone Co. v. Hot Leads Co., LLC</u>, 584 F.Supp.2d 736, 745-46 (D.Md. 2008), the Maryland District Court dismissed a count for aiding and abetting a TCPA violation. The Court held that the TCPA does not provide a right of action for aiding and abetting a statutory violation, relying upon <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164, 182, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).("[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abetters.")

Although 18 U.S.C. §2 provides general aiding and abetting liability for criminal offenses, Congress has never created such a general cause of action in the civil context. Instead, civil aiding and abetting liability is determined on a statute-by-statute basis. <u>Id</u>. at 181–82, 114 S.Ct. 1439. Importantly, in <u>Central Bank</u>, the Supreme Court noted that "Congress [knows] how to impose aiding and abetting liability when it [chooses] to do so." <u>Id</u>. at 176, 182–83, 114 S.Ct. 1439 (noting that the Internal Revenue Code, Commodity Exchange Act, National Bank Act, Federal Reserve Act, Packers and Stockyards Act, and Insider Trading Sanctions Act of 1984 all include explicit aiding and abetting provisions, and finding it determinative that §10(b) of the Securities Exchange Act of 1934 does not).

Aiding and abetting liability is a " 'method by which courts create secondary liability' in persons other than the violator of the statute." <u>Id</u>. at 184, 114 S.Ct. 1439 (*quoting* <u>Pinter v. Dahl</u>, 486 U.S. 622, 648 n. 24, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)). Aiding and abetting liability,

by its nature, extends liability beyond those who engage, even indirectly, in a proscribed activity; it applies to persons who may not engage in the proscribed activities at all, but who simply give a degree of aid to those who do. *See* Id. at 176, 114 S.Ct. 1439.

It is clear, however, that the statutory language of §227(b)(1)(A)(iii) does not specifically provide for such liability, and in light of the plain language of the statute, and the holding in Central Bank, this Court, like the Maryland District Court, should not imply expanded liability under the TCPA for aiding and abetting.

WHEREFORE, for the reasons set forth herein above, Defendants requests this Court enter an Order dismissing this case against Defendants herein.

Dated: June 6, 2014

GRAYROBINSON, P.A.
401 E. Las Olas Boulevard, Suite 1850
Ft. Lauderdale, Florida 33301
Telephone:(954)761-8111
Facsimile:(954) 761-8112
*Counsel for Defendants Ashford and Bridgepoint*

/s/ Ivan J. Reich
Ivan J. Reich, Esq.
Florida Bar No. 778011
ivan.reich@gray-robinson.com

**CERTIFICATE OF CONSULTATION PRIOR TO FILING MOTION**

Pursuant to Local Rule 7.1(a)(3), Defendants' undersigned counsel has consulted with Plaintiff's counsel concerning resolution of the matter for which relief is sought herein, and has been unable to do so, necessitating the filing of this Motion, and advises this Court that Plaintiff opposes the relief sought herein.

/s/Ivan J. Reich
Ivan J. Reich

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was served on this 6th day of June, 2014, (a) electronically upon all parties that have registered for the CM/ECF service list, and (b) by first class mail and email to: Bret Leon Lusskin, Jr., Bret Lusskin, P.A., 20803 Biscayne Boulevard, Suite 302, Aventura, Florida 33180.

/s/Ivan J. Reich
Ivan J. Reich

\815071\1 - # 2939989 v1